## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRANDY CUFF,

      Plaintiff,

      v.

COMMONWEALTH OF
PENNSYLVANIA *and*
DEPARTMENT OF CORRECTIONS,

      Defendants.

No. 4:21-CV-00068

(Chief Judge Brann)

## MEMORANDUM OPINION

### NOVEMBER 28, 2023

## I.    BACKGROUND

"Congress enacted [Title VII of the Civil Rights Act of 1964 ("Title VII")] to improve the economic and social conditions of minorities and women by providing equality in the work place."[1] Many states have adopted similar statutes, such as the Pennsylvania Human Relations Act ("PHRA"), to eradicate workplace harassment.[2] Despite having lofty goals, these legislative schemes are not "general civility code[s]."[3] Not every unpleasant work environment is transformed into a cause of action. To survive this motion for summary judgment, Brandy Cuff must sufficiently identify facts that shift her experience into an actionable claim.

---

[1]   29 C.F.R. § 1608.1(b) (2011).
[2]   *See* 43 PA. CONS. STAT. § 951 (2023).
[3]   *Oncale v. Sundower Offshore Servs. Inc.*, 523 U.S. 75, 80-81 (1998)

### A.    Procedural History

On January 12, 2021, Plaintiff filed a two-count Complaint alleging violations of Title VII and the PHRA. She claims to have faced sexual harassment and retaliation while employed by the Commonwealth of Pennsylvania's Department of Corrections ("DOC"). Defendants filed a motion for summary judgment on August 21, 2023. The motion is now ripe for disposition; for the reasons below, it is granted.

## II.    LEGAL STANDARDS

### A.    Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[5] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[6] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[7]

---

[4]   FED. R. CIV. P. 56(a).
[5]   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).
[6]   *Clark v. Mod. Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993).
[7]   *Id.*

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[8] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[9] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[10] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[11]

### B.   Local Rule 56.1

Local Rule 56.1 requires all motions for summary judgment to be "accompanied by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."[12] The opposing party must then file "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth" by the moving party.[13] "All material facts set forth in" the moving party's statement "will be deemed to be admitted unless controverted by the statement required to be

---

[8]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[9]   *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[10]   FED. R. CIV. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

[11]   FED. R. CIV. P. 56(c)(3).

[12]   L.R. 56.1.

[13]   *Id.*

served by the opposing party."[14] "Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements."[15]

### 1.    Plaintiff's Response to Defendants' Statement of Undisputed Material Facts

As required by Local Rule 56.1, Cuff filed a response to Defendants' Statement of Undisputed Material Facts ("SMF"). Defendants contend that Plaintiff has nevertheless admitted the SMF because her response merely asserted legal conclusions, failed to properly cite the record, and "generally added additional[,] superfluous commentary."[16] Although a largely accurate summary of Cuff's response, the cases cited by Defendants involve much more glaring failures to comply with Local Rule 56.1.[17] Simply including legal conclusions and extraneous information does not warrant admitting all of Defendants' SMF as undisputed.

### 2.    Plaintiff's Additional Material Facts

Local Rule 56.1 does "not permit a non-moving party to file additional factual statements that do not respond to the movant's statement, and such nonresponsive factual statements may be stricken or disregarded."[18] "[I]n the exercise of its

---

[14]   *Id.*
[15]   *Id.*
[16]   Doc. 35 (Defendants' Reply Brief in Support of Motion for Summary Judgement) at 2.
[17]   *See id.* at 2-3.
[18]   *Suchocki v. FedEx Freight, Inc.*, 3:20-cv-01048, 2023 U.S. Dist. LEXIS 7457, at *4, n.2 (M.D. Pa. Jan. 17, 2023) (citing *Farmer v. Decker*, 353 F. Supp. 3d 342, 347, n.1 (M.D. Pa. 2018) *and Barber v. Subway*, 131 F. Supp. 3d 321, 322, n.1 (M.D. Pa. 2015)).

discretion," the Court has considered these "additional[,] non-responsive factual statements but only because the defendants have responded to each of them in corresponding numbered paragraphs."[19]

## III.    FACTUAL BACKGROUND

Plaintiff began working as a DOC corrections officer trainee in October 2018 and transferred to State Correctional Institute Muncy ("SCI Muncy") in May 2019.[20] While at SCI Muncy, Cuff's personal OC spray ended up in the prison under unusual circumstances.[21] Plaintiff faced no discipline for this violation after being exonerated by an internal investigation.[22] Shortly after this incident, Sergeant Brenda Rippey "announced" at a union meeting "that a 'bedazzled twat' had brought her OC spray into the facility and [had] not been disciplined;" she then proceeded to "wonder who she [was] fucking."[23] At SCI Muncy, "bedazzled twat" refers to female corrections officers that were suspected of "dating or sleeping" with management, commonly

---

[19]    *Id.* (citing *Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019); *Loving v. FedEx Freight, Inc.*, Civ. A. No. 3:18-CV-508, 2020 U.S. Dist. LEXIS 81379, at *1, n.1 (M.D. Pa. May 8, 2020); *and Bashore v. Pocono Mt. Reg'l Police Comm'n*, Civ. A. No. 3:18-CV-425, 2020 U.S. Dist. LEXIS 50065, at *1, n.1 (M.D. Pa. Mar. 23, 2020)).

[20]    *See* Doc. 27 (Defendant's SMF), Ex. A (Transfer Letter to SCI-Muncy); Doc. 30 (Plaintiff's AMF), Ex. M (Nov. 1, 2018 Letter from Ty Stanton).

[21]    *See* Doc. 30 (Plaintiff's AMF) ¶ 20. Defendants deny this paragraph but only contend that the individual who brought the OC spray and duty belt into the prison was not identified. Due to this, the underlying event itself is undisputed. *See* Doc. 33 (Defendant's Response to Plaintiff's Counterstatement of Facts) ¶ 20.

[22]    *Id.*

[23]    *See* Doc. 30 (Plaintiff's AMF) ¶ 21; Doc. 33 (Defendant's Response to Plaintiff's Counterstatement of Facts) ¶ 21. Defendants admitted that the "bedazzled twat" incident involving Sergeant Rippey occurred and clarified that it happened at a union meeting. Ample evidence in the record, including Plaintiff's own deposition, supports this clarification.

referred to as "white shirts," to avoid discipline and receive preferrable assignments.[24]

Cuff complained about this incident and an encounter with Officer Terease Maxwell to Stacy Waters, the Chief of Investigations and Training for the DOC's Equal Employment Opportunity ("EEO") Office on January 2, 2020.[25] After a drawn out investigation, Waters substantiated the allegations against Rippey but cleared Maxwell of any wrongdoing.[26] Before any corrective action was taken, Rippey retired.[27]

On January 6, 2020, Plaintiff requested a hardship transfer out of SCI Muncy because it was "a hostile work environment."[28] Prior to the conclusion of the Waters investigation or any decision regarding the hardship transfer request, Cuff submitted a handwritten and notarized resignation letter to Roberta Boyles-Confair, the labor relations coordinator for SCI Muncy, on January 9, 2020.[29] This letter states:

> I am writing this letter to advise you that due to the harassment I have received/endured since transferring into this prison, I am hereby resigning from my position as a corrections officer here at SCI Muncy. I have been subjected to verbal abuse, [i]mplied threats, degrading

---

[24] *See* Doc. 27 (Defendants' SMF) ¶ 5; Doc. 30 (Plaintiff's AMF) ¶ 66. Defendants do not seriously dispute the definition of "bedazzled twat." *See* Doc. 33 (Defendant's Response to Plaintiff's Counterstatement of Facts) ¶ 66.

[25] *See* Doc. 30 (Plaintiff's AMF) ¶ 45; Doc. 27 (Defendants' SMF), Ex. C (DOC EEO File).

[26] *Id.*

[27] *See* Doc. 33 (Defendants' Response to Plaintiff's Counterstatement of Facts) ¶ 7. It is undisputed that Rippey retired before any corrective action occurred; the parties dispute whether DOC "permitted" her to retire. *See id.*

[28] Doc. 30 (Plaintiff's AMF), Ex. P (Hardship Transfer Request).

[29] *See* Doc. 30 (Plaintiff's AMF), Ex. A (Cuff Deposition) ¶¶ 159:1-166:24; Ex G (Boyles Deposition) ¶¶ 23:1-25; and Ex. Q (Notarized Letter).

messages all which are the setting for this hostile work place environment. My last day is effective immediately and this letter serves as my official notice of resignation.

I apologize for any inconvenience my abrupt resignation may cause. It was never my intention, but due to my own self preservation of health and mind I feel this is my option at this time. I hope by bringing this situation and condition of this prison to light any further harassment of myself or other employees can be addressed, handled more appropriately, and eventually eliminated from being the normal occurrences that are accepted at SCI Muncy.[30]

DOC proceeded to send Plaintiff a standardized letter confirming her resignation from her "Corrections Officer 1 position with the Department of Corrections, State Correctional Institute at Muncy" on January 14, 2020.[31]

In an email exchange on January 23, 2020, employees from Pennsylvania's centralized Office of Administration discussed Cuff's hardship transfer and subsequent resignation.[32] The employees on this email thread were Jonathan

---

[30]   Doc. 30 (Plaintiff's AMF), Ex. Q (Notarized Letter).
[31]   Doc. 27 (Defendant's SMF), Ex. G (January 14, 2020 Separation Letter).
[32]   *See* Doc. 27 (Defendants' SMF), Ex. 1 (E-mail Correspondence on Hardship Transfer Request). Plaintiff purported to deny this in its response to Defendants' SMF. However, the response does not adequately identify facts in the record to contest this fact. Cuff cites a series of unrelated facts and her own, self-serving testimony that is unsubstantiated by anything else in the record. *See* Doc. 30 (Plaintiff's AMF) at 5.

Wilson,[33] Ty Stanton,[34] Christopher Linn,[35] and Jim Hull.[36] In an update to Ty Stanton, Wilson specifically dismissed the possibility of Cuff being misinformed on the hardship transfer process after having spoken "with the employee and then" Hull.[37] Despite this conclusion, the hardship transfer request remained open for several months as they awaited the results of the Waters investigation.[38]

Finally, Cuff filed an initial Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on July 21, 2020 and an Amended Charge of Discrimination on August 6, 2020.[39] In the original Charge, she described the "bedazzled twat" union meeting incident, claimed she was "verbally harassed and harassed by email by other employees at SCI Muncy[,]" and discussed the circumstances leading her to submit the handwritten letter to Boyles.[40] The Amended

---

[33] Wilson worked as an assistant to Ty Stanton in the Public Safety HR Delivery Center. *See* Doc. 30 (Plaintiff's AMF), Ex. H (Wilson Deposition) ¶¶ 5:9-14.

[34] Stanton worked for the Commonwealth's Office of Administration as the Public Safety Delivery Center Manager. "[I]n a sense, [he is] the HR director for the Public Safety Delivery Center." This Center provides "HR services to the Pennsylvania Department of Corrections," amongst others. *See id.*, Ex. D ¶¶ 5:20-25.

[35] Linn worked as a Human Resource Program Manager in the Commonwealth's Office of Administration at this time. *See id.*, Ex. E (Linn Deposition) ¶¶ 6:1-23.

[36] Hull worked as a labor relations specialist for the Commonwealth's Office of Administration in the relevant time period. *See id.*, Ex. I (Hull Deposition), ¶¶ 6:1-19.

[37] *See* Doc. 27 (Defendants' SMF), Ex. 1 (E-mail Correspondence on Hardship Transfer Request). Although Hull did not remember much about the events surrounding Cuff's hardship transfer, he did indicate that if "Wilson wrote it [he did not] think there's an issue" regarding its accuracy. *See* Doc. 30 (Plaintiff's AMF), Ex. I (Hull Deposition) ¶¶ 34:1-25.

[38] *See* Doc. 30 (Plaintiff's AMF) ¶ 59.

[39] *See id.*, Ex. J (EEOC Compl.); Ex. K (Amended EEOC Compl.).

[40] *Id.*, Ex. J (EEOC Compl.).

Charge provided greater detail regarding the "bedazzled twat" union meeting incident and the alleged retaliation.[41]

## IV.   ANALYSIS

Defendants advance several arguments in favor of their motion for summary judgment: that the underlying events are time-barred and unexhausted; that Plaintiff has failed to make out the necessary elements of her claims; and that an affirmative defense absolves Defendants of their liability.[42] When analyzing Title VII and PHRA claims, courts "generally interpret the PHRA in accord with its federal counterpart."[43] Unless otherwise noted, any discussion pertaining to Title VII will also apply to Cuff's PHRA claims.

### A.   Statute of Limitations[44]

To bring a Title VII claim in a deferral state like Pennsylvania, Plaintiff must have initially filed "a complaint with the EEOC within 300 days of the alleged unlawful employment practice."[45] But the continuing violation doctrine allows "discriminatory acts that are not individually actionable [to] be aggregated to make out a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations

---

[41]   *Id.*, Ex. K (Amended EEOC Compl.).

[42]   Doc. 28 (Brief in Support of Defendants' Motion for Summary Judgment) at 5.

[43]   *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

[44]   Defendants do not make any arguments regarding the possible untimeliness of Plaintiff's PHRA claims. The Court will therefore exclusively focus on any events that are untimely under Title VII.

[45]   *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013).

period.'"[46] "'[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'"[47] The Supreme Court of the United States has identified "termination, failure to promote, denial of transfer, or refusal to hire as" discrete acts.[48]

The two 300-day periods created by Cuff's administrative complaints are September 25, 2019 and October 11, 2019, respectively.[49] Four confrontations with Officer Maxwell,[50] an event involving Sergeant Rippey,[51] an exchange with Sergeant McElroy,[52] and an incident involving Plaintiff's "feminine products"[53] occurred before either 300-day period, but Cuff has sufficiently identified a "pattern of [non-discrete] actions" to incorporate these events into her sex discrimination claim.

## 1. Failure to Exhaust Administrative Remedies

Before commencing suit, plaintiffs must first exhaust their administrative remedies by "filing a timely discrimination charge with the" EEOC and the

---

[46] *Id.* (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)).

[47] *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

[48] *Id.*

[49] *See* Doc. 30 (Plaintiff's AMF), Ex. J (EEOC Compl.); Ex. K (Amended EEOC Compl.).

[50] *See* Doc. 28 (Defendants' Brief in Support of Motion for Summary Judgment), Ex 1 (CO1 Maxwell Incidents). In these four confrontations, Maxwell berated Cuff for having the top button of her shirt open; referred to her as a "know it all trainee"; indicated that she does not associate with trainees; and accused Plaintiff of stepping on another officer's lunch bag. *Id.*

[51] *See* Doc. 30 (Plaintiff's AMF) ¶ 18. On July 19, 2019, an exchange between Cuff and Rippey occurred over the phone in which Rippey indicated that Cuff thought she was special for having a specific assignment. *Id.*

[52] *See id.* ¶ 16. Sergeant McElroy asked Cuff how she could afford the car she drove and inquired as to which supervisor she was married to. *Id.*

[53] *See id.* ¶ 17. A male corrections officer made it difficult for Plaintiff to bring hygiene products into the prison and proceeded to confront Cuff after she raised this incident with a training supervisor. *Id.*

Pennsylvania Human Relations Commission ("PHRC").[54] Any "ensuing suit is limited to claims that are within the scope of the initial administrative charge."[55]

The Court must first determine whether Cuff properly filed a complaint with the PHRC. The Amended Charge states that it was to be dual filed with the EEOC and PHRC.[56] Therefore, subject to the discussion below, her PHRA claims have been properly exhausted.

Turning to the substance of the filings, Cuff described verbal harassment from other employees, the "bedazzled twat" union meeting incident, and retaliation she faced for filing the internal DOC complaint, including being tricked into resigning.[57] Most of the events underlying her claims are within the scope of any administrative investigation prompted by these averments. By suggesting that she had been verbally harassed, the allegations in subparagraphs 9(a)-(d) and 9(h)-(i) of the Complaint,[58] the conversation with Sergeant McElroy,[59] the confrontations with Maxwell and Rippey preserved by the continuing violation doctrine,[60] and the incident involving

---

[54]  *Barzanty v. Verizon Pa., Inc.*, 361 F. App'x 411, 413 (3d Cir. 2010).

[55]  *Id.* (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)).

[56]  *See* Doc. 30 (Plaintiff's AMF), Ex. K (Amended EEOC Compl.).

[57]  *Id.*, Ex. J (EEOC Compl.); Ex. K (Amended EEOC Compl.).

[58]  *See* Doc. 1 (Compl.) ¶¶ 9(a)-(d); 9(h)-(i). Subparagraphs 9(a)-(d) discuss incidents in which Cuff was yelled at by a fellow employee, treated poorly for being a trainee, and the confrontation over the lunch bag with Maxwell. *Id.* Subparagraph 9(h) alleges that other officers and superiors have referred to Cuff as a "bedazzled twat" and subparagraph 9(i) references an incident where a fellow employee called Plaintiff a "slug." *Id.*

[59]  *See* Doc. 30 (Plaintiff's AMF) ¶ 16.

[60]  *Id.*; Doc. 28 (Defendants' Brief in Support of Motion for Summary Judgment), Ex. 1 (CO1 Maxwell Incidents).

Plaintiff's "feminine products"[61] are within the scope of the administrative complaint. Subparagraphs 9(e)-(f) of the Complaint and the rumor that Plaintiff had an affair with a "white shirt" have been properly exhausted by Cuff's description of the "bedazzled twat" union meeting incident.[62] Finally, the detailed explanation of the purported retaliation in the Amended Charge adequately exhausted that claim as well.[63]

Two incidents, however, are unexhausted: being "shoulder checked" by Maxwell and strip searching a transgender inmate without prior notification.[64] The "shoulder checking" incident involves physical harassment, an allegation that remained unmentioned till now.[65] As perceived by Cuff, this interaction with the transgender inmate constituted sexual harassment through a job assignment.[66] Again, no such allegation had been identified in the administrative complaints.[67] Consequently, these two events will be disregarded.

### 2.    Hostile Work Environment Claim

"[V]erbal or physical conduct of a sexual nature constitute[s] sexual harassment when such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or

---

[61] *Id.*
[62] *See* Doc. 1 (Compl.) ¶¶ 9(e)-(g); Doc. 30 (Plaintiff's AMF), Ex. K (Amended EEOC Compl.).
[63] *See* Doc. 1 (Compl.) ¶ 18; Doc. 30 (Plaintiff's AMF), Ex. K (Amended EEOC Compl.).
[64] *See* Doc. 30 (Plaintiff's AMF) ¶¶ 25, 28.
[65] *See id.*, Ex. J (EEOC Compl.); Ex. K (Amended EEOC Compl.).
[66] *See id.*, Ex. A (Cuff Deposition) ¶¶ 90:15-91:20.
[67] *See id.*, Ex. J (EEOC Compl.); Ex. K (Amended EEOC Compl.).

offensive working environment."[68] To make out this hostile work environment, Cuff must demonstrate that: "(1) [she] suffered intentional discrimination because of [her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected [her]; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability."[69] Determining if an environment is hostile requires the Court to look at the totality of the circumstances,[70] but Title VII and the PHRA "do not countenance a 'cause of action for mere unpleasantness' in the workplace."[71] Defendants challenge Cuff's ability to establish the first, second, and fourth elements of this claim.

### a.    Intentional Discrimination Because of Sex

"Title VII does not prohibit all verbal or physical harassment in the workplace.'"[72] To "defeat a motion for summary judgment, a plaintiff seeking to advance a hostile work environment claim must present some evidence indicating that the harassing conduct of which he or she complains can be traced to his or her

---

[68]  29 C.F.R. § 1604.11 (2016).

[69]  *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 860 (3d Cir. 1990) (quoting *Andrews and Conn v. City of Philadelphia*, 895 F. 2d 1469, 1482 (3d Cir. 1990)).

[70]  *See e.g.*, *Cardenas v. Massey*, 269 F.3d 251, 261 (3d Cir. 2001) *and Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

[71]  *Hubbell v. World Kitchen, LLC*, 688 F. Supp. 2d 401, 419-20 (quoting *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 773 (4th Cir. 1997)).

[72]  *Oncale*, 523 U.S. at 80.

statutorily-protected trait."[73] "But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex."[74]

Defendants correctly identify several events that are missing a sexual or gender component. These include: the allegations in subparagraphs 9(a)-9(d) and 9(i) of the Complaint,[75] the trouble with Plaintiff's personal OC spray,[76] and three of the confrontations with Maxwell.[77] Although indicative of an unprofessional work environment, the lack of a sexual or gender element in these incidents prevents the Court from considering these allegations. The remaining averments involve harassment due to her status as a female corrections officer.[78] Therefore, Plaintiff has established that she suffered intentional discrimination because of her sex.

---

[73] *Hubbell*, 688 F. Supp. 2d at 419 (citing *Brown v. Henderson*, 115 F. Supp. 2d 445, 450-51 (S.D.N.Y. 2000)).

[74] *Oncale*, 523 U.S. at 80.

[75] *See* Doc. 1 (Compl.) ¶¶ 9(a)-(d), 9(i).

[76] *See id.* ¶ 9(e).

[77] The three confrontations involving Maxwell that lack any sexual or gender element are: when Maxwell called Cuff a "know it all trainee"; when Maxwell indicated that she does not associate with trainees; and when Maxwell accused Plaintiff of stepping on another officer's lunch bag. *See* Doc. 28 (Brief in Support of Motion for Summary Judgment), Ex. 1 (CO1 Maxwell Incidents).

[78] The remaining incidents are as follows: the conversation with Sergeant McElroy; the incident where Maxwell commented on the lack of a button on Plaintiff's uniform; the time Sergeant Rippey accused Cuff of having "special privileges"; Sergeant Duck's reference to rumors that Cuff had an affair with a "white shirt"; the conversation where Sergeant Sweeley asked if Plaintiff had an affair with a "white shirt"; the incident where an inmate alleged Cuff retaliated against her because she was married to a supervisor involved in another lawsuit; the "bedazzled twat" union meeting incident; the "bedazzled twat" incident involving Maxwell; and the "feminine products" incident. *See* Doc. 30 (Plaintiff's AMF) ¶¶ 16-19, 21-24.

### b.      Severe or Pervasive Harassment

For these discriminatory incidents to be actionable, "the offending behavior must be sufficiently severe or pervasive to alter the victim's employment conditions and create an abusive environment."[79] The United States Court of Appeals for the Third Circuit "has acknowledged that 'the advent of more sophisticated and subtle forms of discrimination requires [courts to] analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of facially neutral mistreatment, [when] evaluating a hostile work environment claim.'"[80]

Even when viewing the remaining incidents in a light most favorable to Plaintiff, her claim still fails on this prong. The described behavior is certainly not severe. Courts in this Circuit have found comparable incidents involving "racial and misogynistic language[,]" "racist graffiti and 'racially insensitive comments[,]'" and verbal threats to not be sufficiently severe.[81] Plaintiff's allegations also do not rise to the level of severity seen in other cases through actions such as holding a knife to a coworker's breast.[82]

---

[79]   *Troy v. State Correctional Institute-Pittsburgh*, 2:11-cv-1509, 2013 WL 5511265, at *7 (W.D. Pa. Oct. 4, 2013) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 131 (2004)).

[80]   *Infinity Broad. Corp. v. Pa. Human Rels. Comm'n*, 893 A.2d 151, 158 (Pa. Cmmw. Ct. 2006) (quoting *Cardenas*, 269 F.3d at 261-62).

[81]   *Washington v. SEPTA*, Civ. A. No. 19-4213, 2021 U.S. Dist. LEXIS 119669, at *69, n. 47 (E.D. Pa. June 28, 2021) (discussing *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 131 (E.D. Pa. 2020); *Shaw v. Temple Univ.*, 357 F. Supp. 3d 461, 475 (E.D. Pa. 2019); *and Woodard v. PHB Die Casting*, 255 F. App'x 608, 609 (3d Cir. 2007)).

[82]   *See Rorrer v. Cleveland Steel Container*, 712 F. Supp. 2d 422, 428 (E.D. Pa. 2010).

The record also fails to support any contention that the harassment was pervasive. Cuff has alleged that eight incidents and one rumor occurred during her eight-month tenure at SCI Muncy. "'Third Circuit courts have found sexual, derogatory, or insulting statements to be actionable when they are made on a very frequent and continuous, for example weekly, basis.'"[83]  An average of one incident per month does not satisfy this standard.[84]  The fact that several allegations involve "relatively benign" comments and behavior reinforces this conclusion.[85]

Finally, the rumor that Cuff had an affair with a "white shirt" does not satisfy this requirement. The Third Circuit's *Spain v. Gallegos*[86] decision "is most instructive" when evaluating a claim based, in part,  "on gossip about the plaintiff's sexual activity."[87] Cuff "provides no evidence that the rumors she alleges were widespread or enduring, but merely cites a few examples during a brief period in

---

[83]  *Donahue-Cavlovic v. Borough of Baldwin*, 2:15-cv-1649, 2017 U.S. Dist. LEXIS 177493, at *25 (W.D. Pa. Oct. 26, 2017) (quoting *Obergantschnig v. Saw Creek Estates Cmty. Ass'n*, 12-cv-5911, 2013 U.S. Dist. LEXIS 150016, at *20 (E.D. Pa. Oct. 17, 2013)). *See also Grazioli v. Genuine Parts Co.*, 409 F. Supp. 2d 569, 578 (D.N.J. 2005) (declining summary judgment because harassment occurred on a daily basis).

[84]  *See e.g.*, *Guy v. Day Prods.*, Civ. A. No. 94-1699, 1995 U.S. Dist. LEXIS 17620, at *10 (E.D. Pa. Nov. 29, 1995) (finding pervasiveness when harassment occurred on a weekly basis over a ten-month period).

[85]  *Baugh v. Robert Morris Univ.*, Civ. A. 16-430, 2018 U.S. Dist. LEXIS 44873, at *72 (W.D. Pa. Mar. 20, 2018) (citing *Gharzouzi v. Northwest Human Servs. of Pa.*, 225 F. Supp. 2d 514, 536 (E.D. Pa. 2002)). The Court considers the following incidents to be "relatively benign": the conversation with Sergeant McElroy; the conversation where Rippey referred to Cuff's "special privileges"; the "bedazzled twat" incident involving Maxwell; and the conversation with Maxwell about the button on Plaintiff's uniform. *See* Doc. 30 (Plaintiff's AMF) ¶¶ 16-17, 21-24.

[86]  *Spain v. Gallegos*, 26 F.3d 439 (3d Cir. 1994).

[87]  *Bogoly v. Easton Publ'g Co.*, 00-cv-6457, 2001 U.S. Dist. LEXIS 24160, at *15 (E.D. Pa. Nov. 1, 2001).

which she was confronted with them."[88] This is distinguishable from the Third Circuit's conclusion in *Spain* "that 'the rumors developed over a period of several years.'"[89]  The female employee's supervisor in *Spain* also both "created" and continuously "perpetuated" the rumor through "improper behavior."[90] This "improper behavior" differentiated that rumor from those that "might not support a sexually hostile work environment cause of action."[91] Here, there is no indication that the "white shirt" rumored to be having an affair with Cuff, Lieutenant Beckley, initiated or encouraged the rumors; in fact, by Plaintiff's own testimony, the two only had professional interactions.[92] This rumor more closely aligns with "'idle gossip about an alleged office romance'" than behavior that can support a sexually hostile work environment claim.[93]

No rational factfinder would be able to conclude that Cuff's allegations establish this element. While there may well be unprofessional behavior at SCI Muncy, it does not rise to the requisite level of severity or pervasiveness to support this claim.

---

[88]   *Id.* at *18.
[89]   *Id.* at *18 (quoting *Spain*, 26 F.3d at 448-49).
[90]   *Id.* at *16.
[91]   *Id.*
[92]   *See* Doc. 30 (Plaintiff's AMF), Ex. A (Cuff Deposition) ¶¶ 66:3-13.
[93]   *Bogoly*, 2001 U.S. Dist. LEXIS 24160, at *17 (quoting *Spain*, 26 F.3d at 448-49).

### c.      Effect On A Reasonable Person

Finally, Plaintiff is also unable to adequately establish the fourth element of this claim. "This is a critical prong which protects the employer from the 'hypersensitive' employee as it asks whether the discrimination would detrimentally affect a reasonable person of the same sex in Plaintiff's position."[94] To satisfy this element, the comments must "go beyond the trivial criticisms and petty insults that one might reasonably expect in a workplace."[95] In a case involving the DOC, another court in this Circuit concluded that subjecting the plaintiff "to a litany of lewd innuendos, pornographic comments, and offensive questions" satisfied this prong.[96] Here, "[n]othing in the record suggests that the sort of banal, everyday annoyances that constitute the bulk of plaintiff's grievances were so extreme that a reasonable person would have suffered a detrimental effect significant enough to amount to a change in the terms and conditions of [their] employment."[97]

The Court is sympathetic to the Plaintiff and the unpleasant work environment she experienced at SCI Muncy, but that alone cannot save her sex discrimination

---

[94]   *McCauley v. White*, Civ. A. No. 01-4071, 2002 U.S. Dist. LEXIS 13036, at *14 (E.D. Pa. May 21, 2002).

[95]   *Ivins v. Pa. Dep't of Corr.-State Corr. Inst. at Graterford*, Civ. A. No. 17-577, 2019 U.S. Dist. LEXIS 25233, at *26 (E.D. Pa. Feb. 15, 2019).

[96]   *Id.* These offensive questions and comments included instances where male coworkers propositioned the plaintiff, asked her if she was pregnant with another corrections officer's child, and inquired about details regarding Plaintiff's consensual sexual relationship with another corrections officer. *Id.* at *4-5.

[97]   *McCartney v. Pa. State Police*, 1:09-cv-01817, 2011 U.S. Dist. LEXIS 83409, at *86 (M.D. Pa. Mar. 3, 2011).

claims. There is no genuine issue of material fact that would enable Plaintiff to survive summary judgment on this issue. As a result, there is no need for the Court to reach Defendants' affirmative defense.

### 3. Retaliation Claim

To establish a retaliation claim, a plaintiff must show: "(1) [that she engaged in] protected employee activity; (2) adverse action [was taken] by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[98] After the plaintiff "makes these showings, the burden of production of evidence shifts to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action."[99] "If the employer advances such a reason, the burden shifts back to the plaintiff to demonstrate that 'the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'"[100]

Plaintiff can clearly establish that she engaged in a protected activity by reporting sexual harassment to DOC's EEO Office.[101] If some adverse action can be demonstrated, causality is inferable due to the "temporal proximity" between the

---

[98] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Marra v. Phila. Hous. Auth.*, 419 F.3d 286, 300 (3d Cir. 2007)).

[99] *Id.*

[100] *Id.*

[101] *See e.g.*, *Daniels*, 776 F.3d at 193 (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)).

protected activity and the alleged adverse action.[102] Therefore, the outcome of this motion turns on whether DOC tricked Cuff into resigning. Improper inducement to resign would satisfy this prong, but a "voluntary resignation is not an adverse employment action[,]" even when based on an innocent misunderstanding.[103]

As "a general proposition, 'conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'"[104] "This rule has been extended to self-serving deposition testimony."[105] As a result, the Court is "not 'required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question.'"[106] The basis of Plaintiff's contention is her own, self-serving testimony and a portion of Stacy Water's testimony that does not support Cuff's position.[107] However, that does not mean Cuff's testimony will automatically be disregarded; instead, this testimony must be "juxtaposed with the other evidence" in the record to

---

[102] *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).

[103] *LaRochelle v. Wilmac Corp.*, 769 F. App'x 57, 61 (3d Cir. 2019) (citing *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186 (4th Cir. 2004)).

[104] *Johnson v. MetLife Bank,* 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012) (citing *Gonzalez v. Sec'y of the Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012)).

[105] *Id.* (citing *Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011)).

[106] *Hammonds v. Collins*, 12-cv-00236, 2016 U.S. Dist. LEXIS 52960, *8 (M.D. Pa. Apr. 20, 2016) (quoting *Brooks v. Am. Broad. Companies, Inc.*, 999 F.2d 167, 172 (6th Cir. 1993)).

[107] A close examination of the deposition only indicates that Cuff communicated to Waters that she felt she had been retaliated against. Although Waters notes that Cuff feared she would be "miserable" while her hardship transfer was processed, there is no indication that this was due to retaliation by the human resources staff at SCI Muncy. Because this testimony and any reasonable inferences drawn from it does not support Plaintiff's contention, only Cuff's assertions will be considered. *See* Doc. 30 (Plaintiff's AMF), Ex. B (Waters Deposition) ¶¶ 22:17-23:17.

determine if a "rational factfinder" could "credit Plaintiff's testimony, despite its self-serving nature."[108]

"[J]uxtaposed with the other evidence[,]" no rational factfinder would "credit" Cuff's assertions. As noted above, Plaintiff failed to adequately contest the January 23, 2020 email exchange amongst several Office of Administration employees.[109] In that email thread, Wilson noted that Hull had "brought it to [his] attention that the employee[, Cuff,] may have been misinformed on the process at the institutional level and resigned while awaiting the hardship transfer."[110] Wilson proceeded to explain that "[a]fter speaking with the employee and then [Hull], it was found that was not the case" and instead, that "[s]he did not want to come back to work until her transfer so the institution said she would have to resign if she didn't want to come back to work."[111]

This exchange indicates that Plaintiff knowingly resigned because she did not want to continue working at SCI Muncy while awaiting the hardship transfer.[112] According to Plaintiff's own account, only SCI Muncy employees had any reason to retaliate against Cuff; no such motive was identified for the employees in the

---

[108] *Johnson*, 883 F.2d at 549.

[109] Plaintiff purported to deny this fact in its response to Defendants' SMF. However, the response does not adequately identify facts in the record to contest this fact. Instead, Cuff cites a series of unrelated facts and her own, self-serving testimony. *See* Doc. 30 (Plaintiff's AMF) at 5.

[110] Doc. 27 (Defendants' SMF), Ex. I (E-mail Correspondences on Hardship Transfer Request).

[111] *Id.*

[112] *Id.*

centralized Office of Administration.[113] Even though it is possible to use leave to cover absences leading up to a hardship transfer, nothing suggests that Plaintiff inquired about such an option or presented a way to handle missing work.[114] Instead, this uncontested aspect of the record signals that Cuff's lack of interest in working at SCI Muncy led her to resign.[115] After comparing Cuff's self-serving testimony with these aspects of the record, no rational factfinder could "credit" her unsupported assertions.

Because this email exchange can similarly be viewed as self-serving for the Defendants, drawing additional inferences from the record is useful. It is uncontested that Roberta Boyles-Confair made standard resignation paperwork available to Plaintiff and that she chose not to read or sign it on January 9, 2020.[116] Cuff explains that she did not trust SCI Muncy, but this self-serving statement contradicts the very contention it is meant to support.[117] The standard resignation paperwork would have revealed the impact this action would have on her employment with DOC and undermine any attempt to deceive Plaintiff.[118]

---

[113] *See* Doc. 30 (Plaintiff's AMF), Ex. A (Brandy Cuff Deposition) ¶¶ 159:1-166:24.

[114] *See* Doc. 30 (Plaintiff's AMF), Ex. E (Christopher Linn's Deposition), ¶¶ 31:22-32:3.

[115] *See* Doc. 27 (Defendants' SMF), Ex. I (E-mail Correspondences on Hardship Transfer Request).

[116] *See* Doc. 30 (Plaintiff's AMF), Ex. A (Cuff Deposition) ¶¶ 153:19-154:16, 165:8-166:14.

[117] *See id.*, Ex. A (Cuff Deposition) ¶¶ 153:19-154:16, 159:1-166:24.

[118] *See id.*, Ex. A (Cuff Deposition) ¶¶ 153:19-154:16, 155:1-156:19, 159:1-166:24. Plaintiff specifically acknowledges that she would not sign anything that said she was resigning from DOC. Although suggestive of the fact that Cuff misunderstood how her employment functioned, this does not transform her resignation into a form of retaliation. It can be inferred that the standard resignation paperwork would have included language indicating that she had resigned from her employment with the DOC or the Commonwealth like the January 14, 2020

Cuff's handwritten letter also makes no mention of transferring to another DOC facility and instead says that she would be resigning effective immediately.[119] Although Cuff again offered an explanation for this notable absence, that self-serving statement is undone by her lack of response to the January 14, 2020 separation letter.[120] The separation letter specifically stated that Cuff had resigned from her employment with the Commonwealth; yet, Plaintiff did not respond to the letter to try to keep her job with DOC or assert that she was being retaliated against.[121] Failing to respond to a clear, early indication that her resignation impacted her employment with the DOC renders her self-serving allegation further incapable of belief.

Finally, the internal disarray at DOC caused by Cuff's resignation does not support a genuine issue of material fact. The ongoing uncertainty at DOC arose due to Cuff's filing of a hardship transfer, shortly thereafter submitting her resignation letter, and repeatedly inquiring into the status of the hardship transfer for months after her resignation.[122] Although suggestive to this Court of bureaucratic dysfunction, this confusion does not support Cuff's testimony that she had been tricked into resigning as a form of retaliation. Instead, indications as early as January

---

separation letter. This inference is supported by the advice she received from a union representative at another DOC institution. *See id.*, Ex. A (Cuff Deposition) ¶¶ 155:1-156:19.

[119]  *See* Doc. 30 (Plaintiff's AMF), Ex. Q (Notarized Document).

[120]  *See* Doc. 30 (Plaintiff's AMF), Ex. A (Cuff Deposition) ¶¶ 160:1-21; Doc. 27 (Defendant's SMF), Ex. G (January 14, 2020 Separation Letter).

[121]  *See* Doc. 27 (Defendant's SMF), Ex. G (January 14, 2020 Separation Letter).

[122]  *See* Doc. 30 (Plaintiff's AMF) ¶¶ 36-44.

23, 2020 demonstrate that the Office of Administration had ruled out any possibility of retaliation after a conversation with Cuff.[123]

Plaintiff cannot meet her burden "solely on the basis of a self-serving [deposition] and a Counter Statement of Facts citing to [her] self-serving [deposition], both of which consist of conclusory and speculative allegations."[124] "Here, in light of [all] the evidence that contradicts [and undermines] Plaintiff's self-serving testimony regarding" her resignation, "no rational factfinder would credit that testimony."[125] Therefore, the Court will also grant Defendants' motion as it pertains to Cuff's retaliation claims under Title VII and the PHRA.

## V.    CONCLUSION

For the reasons discussed above, Defendants motion for summary judgment is granted. Although Plaintiff has demonstrated that an unprofessional and oftentimes unpleasant work environment existed at SCI Muncy, these allegations are unable to support her Title VII and PHRA claims.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[123] *See* Doc. 27 (Defendants' SMF), Ex. I (E-mail Correspondences on Hardship Transfer Request).

[124] *Arnold v. Autozone, Inc.*, Civ. A. No. 13-1329, 2016 U.S. Dist. LEXIS 25759, at *40 (E.D. Pa. Mar. 2, 2016).

[125] *Dykes v. Marco Grp., Inc.*, 222 F. Supp. 3d 418, 426 n.4 (E.D. Pa. 2016).